```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
            v.                                               :
                                                             :
GUSTAV KLOSZEWSKI, et al.,                                   :
                                                             :
                        Defendants.                          :
                                                             :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/11/17

**OPINION AND ORDER
DENYING DEFENDANT
KLOSZEWSKI'S MOTION TO
DISMISS THE INDICTMENT**

16 Cr. 200 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Gustav Kloszewski moves to dismiss the indictment for the Government's failure to preserve and produce exculpatory evidence contained on the cell phone of Kloszewski's co-conspirator ("CC-3"). Kloszewski argues that the Government violated his due process rights, as expressed in *Brady v. Maryland*, 373 U.S. 83 (1963). The crux of Kloszewski's motion is that videos contained on CC-3's cell phone will disprove a fact alleged in Kloszewski's criminal complaint: that CC-3 obtained firearms that she later sold in New York directly from Kloszewski. The missing videos, Kloszewski contends, will show that CC-3 obtained the firearms not from Kloszewski, but by burglarizing the house of a man named Justin. Kloszewski's motion is denied.

## STATEMENT OF FACTS

The indictment charges Kloszewski with four counts: Firearms Trafficking Conspiracy in violation of 18 U.S.C. § 371; Firearms Trafficking in violation of 18 U.S.C. § 922(a)(1)(A); Interstate Transportation of Firearms in violation of 18 U.S.C. § 922(a)(5); and Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. § 1951. The evidence at issue in this

motion relates to the first three counts, the firearm charges. The indictment alleges that Kloszewski and co-conspirators transported firearms from Florida for sale in New York. The criminal complaint, based upon the sworn statement of Special Agent Scott Cunningham of the Drug Enforcement Agency ("DEA"), contains a more specific allegation. The complaint alleges that CC-3, one of Kloszewski's co-conspirators, told Agent Cunningham that she obtained the firearms "on consignment" from Kloszewski, and that CC-3 typically deposited the proceeds into Kloszewski's bank account after each sale. According to the complaint, CC-3 told this to Agent Cunningham shortly after the DEA arrested her on February 24, 2016, after she was caught selling firearms in New York in a controlled purchase set up by the DEA.

Following CC-3's arrest, the DEA seized her phone. March 2, 2017 Hr'g Tr. ("Tr.") 9-10. CC-3 began cooperating almost immediately. While in custody, and at the DEA's direction, CC-3 called Kloszewski from her cell phone, which the DEA had returned to her for the sole purpose of making this call, and informed Kloszewski that she had sold the firearms and had the proceeds. Tr. 13-14. Agent Cunningham testified that CC-3 told him that she obtained the guns by robbing a house in Miami, Florida, and that Kloszewski had participated in the robbery. Tr. 12. On cross-examination, Agent Cunningham was asked if CC-3 had told him that Kloszewski had given her the guns on consignment (as Agent Cunningham stated in the complaint); he answered that he could not recall. Tr. 64-65, 67.

Agent Cunningham testified that he did not search CC-3's phone while she was in custody, explaining that he did not have a search warrant. He stated also that the DEA had developed a working relationship with CC-3, and that asking for her consent to search her phone might disrupt their rapport. Agent Cunningham stated that the DEA believed it was more

2

important to continue working with CC-3 to further the investigation, than to risk alienating her. Tr. 17-18.

On February 25, 2016, the Government decided not to prosecute CC-3 and to obtain her continuing cooperation to further their investigation. The DEA released CC-3 from custody, and returned her phone to her so that she could respond to calls from Kloszewski or other conspirators. Tr. 16. The next day, February 26, 2016, CC-3 and Agent Cunningham traveled to Miami, Florida, and CC-3 called Kloszewski to arrange a meeting with him. That evening, CC-3 met with Kloszewski and others. Tr. 20. Prior to the meeting, the DEA provided CC-3 with $1,000 in pre-recorded buy money, which CC-3 was to present to Kloszewski as the proceeds from the recent firearms sale in New York. Tr. 20.

At the DEA's direction, CC-3 recorded the conversation using a recording device provided by the DEA. A transcript of that recording has been provided to Kloszewski, and a portion of the transcript was introduced into evidence at an evidentiary hearing held on March 2, 2017. The transcript indicates that during the February 26 meeting, CC-3 showed Kloszewski photographs on her phone of the firearms that had recently been sold in New York. Kloszewski asked CC-3 questions about the firearms, and appeared to have had familiarity with them. In addition to the photographs, CC-3 also showed Kloszewski a video, which apparently depicted CC-3 and other individuals stealing the firearms from the house of a man named Justin. GX-14 at 38–39. Following this meeting, the DEA arrested Kloszewski, and found on his person the $1,000 in pre-recorded buy money that the DEA had given to CC-3 prior to the meeting. Tr. 22. The DEA permitted CC-3 to retain her phone.

Agent Cunningham testified that he listened to the recording of the meeting sometime after February 26, and delivered a copy of the recording to the U.S. Attorney's Office

3

around March 1, 2016. Tr. 82. Around this time, Agent Cunningham also learned from CC-3 that Justin had informed CC-3, via text messages to her phone, that he knew that CC-3 and her friends had burglarized his house. Agent Cunningham stated that he viewed these text messages by looking at CC-3's phone over her shoulder. Tr. 82-84. During cross examination, Agent Cunningham was unable to explain the contradiction between these text messages and the sworn complaint, which stated that CC-3 had told him that Kloszewski had given her the guns.

Agent Cunningham testified that CC-3's phone was not searched or taken into custody after the February 26 meeting because of CC-3's continuing cooperation with the investigation, and her ongoing use of the phone to make recorded calls to individuals under investigation. Tr. 24-26, 38. The Government never searched CC-3's phone, even during a period in mid-March of 2016 when CC-3 stopped cooperating with the Government. CC-3 resumed her cooperation about a month later following a proffer session, and continued to use her cell phone to make recorded phone calls in that capacity. Tr. 32-34.

On May 10, 2016, an associate of CC-3 ("CC-4") advised Agent Cunningham that CC-3 had lost her phone while traveling in Colombia, South America. Tr. 35; GX-12. During a proffer session, CC-3 gave the Government a different account: she had lost her phone at Miami International Airport after being interdicted by Customs and Border Patrol ("CBP"). Tr. 106. On May 26, 2016, counsel for Kloszewski requested the contents of CC-3's phone. Tr. 39. After receiving that request, the Government undertook various efforts to obtain the cell phone's contents. It obtained a search warrant to search CC-3's iCloud account; it communicated with CBP to see if CBP was in possession of the phone; it communicated with CC-3's attorney; and it attempted to communicate with Justin, the man whose house was apparently burglarized in the videos at issue. Tr. 39-40.

## PROCEDURAL HISTORY

Shortly after Kloszewski was indicted, the Government produced a transcript of the recording of CC-3's February 26 meeting with Kloszewski. On September 20, 2016, Kloszewski demanded production of the contents of the cell phone, including the photographs and videos referenced in the transcript of the February 26 meet, as well as the cell phone's call log and location history. The Government responded on October 28, 2016 that the "video, audio and cellphone requested are not within the Government's possession, custody, or control." On November 18, 2016, Kloszewski filed the instant motion.

On January 7, 2017, just prior to oral argument, the Government advised the Court that CC-3 was no longer a "cooperating witness and is not expected to be a cooperating witness at the trial." Following oral argument, the Government advised the Court that it had obtained from CC-3 the photographs and one of the videos showing the theft of Justin's home, and had produced them to Kloszewski. Nevertheless, I ordered an evidentiary hearing to evaluate the Government's good faith in the circumstances and to gain a better understanding of the significance of the loss of CC-3's phone. The hearing was held on March 2, 2017. Special Agents Scott Cunningham and Michael Antonucci of the DEA testified.

## DISCUSSION

"In a criminal prosecution, the government is constitutionally obliged to disclose evidence favorable to the accused when such evidence is material to guilt or punishment." *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Evidence is favorable to the accused if it either tends to show that the accused is not guilty or if it impeaches a government witness." *Id.* At the present time, it is unclear if the missing videos will be material to Kloszewski's guilt, such that "had the evidence been disclosed

5

to the defense, the result of the proceeding would have been different." *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008) (citation omitted).

Kloszewski contends that the videos will likely disprove a fact alleged in the complaint: that CC-3 obtained the firearms that were later sold in New York directly from Kloszewski. It is true that the complaint, which was based on the sworn statement of Agent Cunningham, alleges that CC-3 told him when she was arrested on February 24, 2016 that she had obtained the firearms "on consignment" from Kloszewski in order to sell them in New York. However, the complaint has since been superseded by the indictment, and the Government has no obligation to prove each and every fact alleged in the complaint. *See United States v. Heggins*, 2017 WL 906968, at *3 (W.D.N.C. Mar. 7, 2017) ("[T]he Government is not required to present admissible evidence with its Complaint or prove facts alleged in its initial pleading."); *Wright & Miller*, Fed. Prac. & Proc. Crim. § 41 (4th ed.) ("[T]he complaint is the temporary charging document, and is superseded once the more formal charging document is filed."). The Government may be able to prove Kloszewski's complicity by evidence other than a direct consignment from Kloszewski to CC-3. The Government's burden is to prove each and all the elements of the crimes alleged against Kloszewski in the indictment, and it can satisfy that burden by proofs not involving a consignment.

The Government has not disclosed how it intends to prove its case. It is unclear at this point how the Government will prove Kloszewski's involvement in the firearm trafficking crimes alleges in Counts I through III of the indictment. Consequently, it is unclear if CC-3's phone has exculpatory value under *Brady*. If the Government plans to prove that CC-3 obtained the guns from Kloszewski on consignment, the issues raised by this motion can be explored again, and if appropriate, the Government could be precluded from offering such proof.

Kloszewski argues that the missing videos are necessary to impeach the credibility of Agent Cunningham, a potential Government witness. Of course, the Government's "*Brady* obligation to disclose material evidence favorable to a criminal defendant applies not only to exculpatory evidence, but also to evidence that could be used to impeach government witnesses." *United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998); *see also United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008) ("Evidence is favorable if it is either exculpatory or impeaching."). However, it is not likely that Agent Cunningham will testify, for his information is derivative of CC-3's.[1] Nor is it likely that CC-3 will testify. She is no longer cooperating with the Government, which has advised that it has no intention of calling her as a witness.

Nor is dismissal of the indictment required because of the Government's spoliation of evidence. "A criminal defendant moving for dismissal on the basis of spoliation of the evidence must make a two-pronged showing that the evidence possessed exculpatory value 'that was apparent before [it] was destroyed' and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). Under these circumstances, the defendant must also "show that the government acted in bad faith." *United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989). "Failure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a defendant's spoliation motion," including motions to dismiss an indictment due

---

[1] Agent Cunningham may have to authenticate the transcript of the February 26, 2016 recording, but no connection is evident between this limited proof and the contents of CC-3's phone.

7

to spoliation. *Greenberg*, 835 F.3d at 303.[2] Kloszewski has not satisfied any of these three elements.

First, Kloszewski has not shown that the missing videos possessed exculpatory value that was apparent to the Government prior to CC-3 losing her phone. It is true that one could reasonably conclude from the transcript of the February 26 meeting that CC-3 obtained the firearms by burglarizing Justin's home. However, Kloszewski's involvement in or connection to that burglary remains unclear. The Government argues that the transcript is in fact *inculpatory* on this point because when Kloszewski watched the video on February 26, he stated "Holy Shit! That's the closet!" This statement, the Government argues, suggests Kloszewski's familiarity with the site of the burglary. In *United States v. Ramirez*, 2011 WL 6945199 (S.D.N.Y. Dec. 23, 2011), the court denied a defendant's motion to dismiss the indictment due to the Government's alleged failure to preserve recordings of a meeting between the defendant and a cooperating witness on the ground that the recordings were not necessary exculpatory. "The defendant can only speculate that any tapes possessed exculpatory value; it is equally possible that any recording confirmed the [cooperating witness'] story" regarding inculpatory statements made by the defendant. *Id.* at *2. This reasoning applies here. In light of the dueling interpretations of the existing evidence, it is not apparent that any additional videos would be exculpatory.

---

[2] Kloszewski argues that he need not show bad faith. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). However, "when the Government has, instead, failed to preserve evidentiary material that is 'potentially useful,' such failure 'does not violate due process *unless a criminal defendant can show bad faith*' on the part of the Government." *Greenberg*, 835 F.3d at 303 (quoting *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004)). Here, the missing videos are only "potentially useful." Not only is it unclear what the missing videos will show, but even if they show what Kloszewski believes they will show, the videos might be irrelevant regardless, depending on how the Government attempts to prove its case. Kloszewski must therefore show that the Government acted in bad faith.

Second, Kloszewski has already received "comparable evidence" through the Government's prior productions. Kloszewski brought this motion under the theory that the videos would prove that CC-3 did not obtain the firearms sold in New York directly from Kloszewski. Based upon the video that the Government has already produced, as well as the transcript of the February 26 recording, Kloszewski can now make this argument. In a letter that Kloszewski submitted to the Court, for example, Kloszewski argued that because "the video they provided confirms [CC-3's] presence in Justin's home, where the firearms were obtained," CC-3 therefore "did not receive the firearms from Mr. Kloszewski as she originally told the Government." Any additional videos would be duplicative on this point. The Government also appears to have conceded the very fact that Kloszewski seeks to rebut. At the evidentiary hearing, both of the Government's witnesses testified that their understanding was that CC-3 obtained the firearms by burglarizing Justin's home. *See* Tr. 12, 52, 107. Should these witnesses testify to the contrary at trial, Kloszewski may impeach them using this prior testimony.

Third, Kloszewski has not shown that the Government acted in bad faith by failing to search CC-3's phone and preserve its contents. Agent Cunningham testified that he did not search CC-3's phone because it was important to further the investigation not only with respect to Kloszewski, but to other individuals under investigation, and that searching CC-3's phone might alienate her and disrupt her cooperation. Although this does not explain why the Government did not search her phone during the period in late March when CC-3 was not actively cooperating with the Government, Agent Cunningham testified that at that time, the Government believed it had substantial evidence against Kloszewski, and had shifted the focus of the investigation elsewhere. Agent Cunningham also stated that in hindsight, he wishes that

he had searched CC-3's phone because it likely contained additional incriminating evidence against Kloszewski.

The DEA's conduct in this case, while arguably negligent, does not amount to bad faith, for there is no evidence that Agent Cunningham or any other Government official acted maliciously or engaged in deliberate misconduct. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (conduct that "can at worst be described as negligent" does not amount to bad faith). As discussed above, the exculpatory value of the missing evidence remains in dispute, and Kloszewski has not shown that the Government had any incentive to prevent Kloszewski from obtaining it. *See Youngblood*, 488 U.S. at n.* ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) ("We can conclude with confidence that the recordings were not intentionally destroyed based on the fact that the government was itself disadvantaged by the destruction of the tapes."). Absent a showing of bad faith, Kloszewski's motion fails.

## CONCLUSION

For these reasons, Kloszewski's motion is denied. The Clerk shall terminate the motion and all related letter-motions. (Dkt. Nos. 92, 113, 118, 127). The final pre-trial conference will be held on June 6, 2017, at 2:30 p.m.

SO ORDERED.

Dated: May //, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge